EMPLOYERS MUTUAL OF WAUSAU
v. RAYMOND HALE

5-6107                                        486 S.W. 2d 680

Opinion delivered November 27, 1972

Terral, Rawlings, Matthews & Purtle, for appellant

*Wright, Lindsey & Jennings,* by: *George E. Lusk, Jr.,* for appellee.

CARLETON HARRIS, Justice. This is a workmen's compensation case. Raymond C. Hale, an employee of Halstead Metal Products, received a back injury in the course of his employment on June 11, 1969. At this time American Motorists Insurance Company carried the workmen's compensation insurance; however, after November 1, 1969, Employers Mutual of Wausau, appellant herein, became the insurance carrier. After his injury, Hale subsequently returned to work and suffered another injury in March, 1971. This injury occasioned an operation for a ruptured disc. The question in this litigation is which insurance carrier is liable, appellant contending that the disability resulted from the June, 1969 injury and appellee contending otherwise. The commission held that the injury in March, 1971 was the cause of the ruptured disc and granted an award against appellant company. On appeal to the Cross County Circuit Court, this award was affirmed, and from the judgment so entered, appellant brings this appeal. For reversal, it is asserted that there is no substantial evidence that appellant sustained a ruptured disc on March 16, 1971.

No question of compensability exists in this case but appellant argues that the evidence is to the effect that the ruptured disc was sustained in June, 1969; the real argument of appellant is that medical testimony is necessary to establish a ruptured disc and, says appellant, there is no medical evidence that this injury occurred in 1971.

Hale testified that in June, 1969, while at work, he went to answer the telephone and slipped on a plate of steel which contained a spot of grease. He said that he did not fall but was jerked, and two or three days later his back started hurting. He made several visits to a Chiropractor but lost no time from work. However, in September, he was still bothered with pain and accordingly went to Dr. Willard G. Burks, an M.D. in Wynne. He visited Burks two or three times and that doctor told

him to take off from work for one week, which he did, and this rest from the job seemed to help. Hale obtained a back brace on the advice of Burks, and also took muscle relaxers and anacin. Claimant testified that Burks told him it was either a strain or ruptured disc, and he was not sent to a specialist. Hale described the pain "like a catch" or a "crick in his back". He said that it might hurt in the morning and not hurt in the afternoon, but he was in pain about three-fourths of the time from then until March, 1971; however, after taking off from work in September, 1969 for one week, he did not miss any time from work until the March accident. At that time, the witness said that he bent over, twisting his body while leaning toward two beams and suddenly felt as though he had "stuck a hot knife" in the lower part of his back, just above the tailbone. Hale described this pain as much more severe than he had undergone prior to that time, and about a week later he had to quit work. The pain was constant and he again visited Dr. Burks who placed him in the hospital for about a week; he was then sent to Dr. Matthew Wood, a specialist in Memphis. Wood examined him and scheduled surgery for the next day.

Dr. Burks testified that he was Hale's family doctor and first saw him for back trouble on September 15, 1969. Burks said that he felt Hale had a ruptured disc, "He had positive straight leg raising which was simply a test that most physicians use to determine nerve irritability—he had pain down the right leg with positive straight leg raising and decreased but I felt he had a possibly disc—I gave him conservative treatment, bed board rest and heat treatment. The doctor subsequently stated that this was the same treatment he would give for a lumbar sprain. Burks testified that after seeing claimant on September 19, 1969, he discharged him as able to return to work, "Yes, sir—at this time his back appeared to be fine—he had no limitation of motion—he had lost his positive straight leg raising and he returned to work the following day."

The doctor stated that in his opinion there was no permanent partial disability at that time and he did not see him again with regard to his back until March 25, 1971. Burks did not remember whether he was given a history of another accident at that time and did not make any such history a part of his clinical records; he placed Hale in the hospital, "put him on muscle relaxants, bed board and a heating pad and gave him ultra sound which is more or less physical therapy type of component and this is what I did at this time—he did not respond to it at this time—he was as bad or if not worse." It was then recommended that Hale see a Neurosurgeon in Memphis.

Dr. Matthew Wood, a Neurosurgeon of Memphis testified that he was given a history of the accident of 1969; that Hale told him that radiating leg pain commenced about three months after his injury and he had recurrent and episodic pain after that. Wood said that a disc was subsequently removed from the area, and the doctor, subsequently by letter, gave an opinion that the back injury had been received about twelve to fifteen months prior to the surgery. He stated that Hale's statement that he had pain three-fourths of the time since September, 1969, whether he was working or at home, would be consistent with the fact that he sustained a ruptured disc in 1969. Further, that the wearing of the brace[1] and the taking of muscle relaxers and anacin would be consistent with the fact that he was hurting and also consistent with a ruptured disc.

Dr. Burks' record on Hale reflected that in September, 1969, Hale had pain down his right leg. Wood stated:

"I might add that even though he was having right leg pain at that time, he was having bilateral pain when I saw him; that is, pain in both legs, greater on the left. This man's disc was removed from the left side. We always remove it from the side of the greatest pain when it is a central disc, but it would be consistent with a ruptured disc."

[1] Hale stated that he had worn the brace 50% to 75% of the time.

It developed that Wood had never received any information that Hale had a second injury in March of 1971, and he said that in examining a protruded or slipped disc there was no way of telling how long the condition had been present; that his findings were based primarily on the history given to him by Hale. Wood stated:

"If I had got a history he had been injured in 1969 and got over that attack in, say, two or three weeks and had back pain rather than leg pain, and went back to work and re-injured himself in 1971, a couple of years later, and, then, had radiating leg pain, then there would not be any question in my mind that this would be a new thing. The history we have is different. The history we have is he had recurring trouble with the injury in '69."

Appellant argues that there is no medical testimony in the record to the effect that the March, 1971 injury was the cause of the ruptured disc; that to the contrary, the medical evidence is that it occurred in June, 1969; that a ruptured disc is a type of injury that requires medical proof; there being no specific medical evidence that the rupture was occasioned by the accident in 1971, the commission had no evidence upon which to base its award against appellant.

We do not agree with the conclusion reached by appellant, though we do agree that whether one has a ruptured disc requires medical evidence. There, of course, is positive medical evidence that Hale suffered a ruptured disc. No one doubts that. The only question is when he suffered it and we are of the opinion that there was substantial evidence to support the finding of the commission. While Dr. Burks diagnosed the injury of June, 1969 as a ruptured disc (directing the same treatment however that he would authorize for a lumbar sprain), let it be remembered that Hale was only off from work for one week, and continued to work at his regular job thereafter for approximately twenty-one months. In this connection, Dr. Wood testified that it is unusual for

one to continue work after suffering a ruptured disc. Accordingly, we have a man whose condition after his 1969 injury (following a week's rest from work), was described as "fine", with no sort of permanent disability. To the contrary, after the March, 1971 injury, surgery was necessary. Hale also said the pain was much more severe after the March incident, stating "Well yes sir it was just constant then my feet started getting numb, which I guess it was pressing against the nerve or something." The witness testified that he had had no trouble with his feet prior to the March accident, and also stated that he had had no difficulty with his legs before that accident.

Summarizing, the medical testimony, particularly that of Dr. Wood, establishes that Hale suffered a ruptured disc; exactly *when* he suffered the injury is not established by the medical evidence, but we think that the facts and circumstances attendant upon each injury were such as to justify the commission in reaching the conclusion that the rupture occurred at the time of the second accident, i.e., we are of the view that the commission's finding was supported by substantial evidence.

Affirmed.